UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | | |
|---|---|---|
| CITY OF MIAMI GENERAL EMPLOYEES' & SANITATION EMPLOYEES' RETIREMENT TRUST, on Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>LKQ CORPORATION, et al.,<br><br>Defendants. | ) | Civil Action No. 3:26-cv-00498<br><br><u>CLASS ACTION</u><br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Luke A. Evans<br><br>THE INSTITUTIONAL INVESTORS' MEMORANDUM OF LAW IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. Nordea's Manufactured Assignments Do Not Confer Standing, Do Not Create a Financial Interest, and Have Not Been Proven Valid ........ 3

1. The Assignments Cannot Supply *Blue Chip Stamps* Standing ........ 4

2. The Assignments Evidence that Nordea's Claimed Financial Interest Is Zero ........ 5

3. Nordea Has Not Carried Its Burden to Prove the Assignments Convey What It Claims ........ 8

B. Nordea Cannot Establish Its *Prima Facie* Adequacy as a Class Fiduciary ........ 10

III. CONCLUSION ........ 12

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Baydale v. Am. Express Co.*,
2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009) .......... 7, 8

*Bhuva v. Super Micro Comput., Inc.*,
No. 3:26-cv-02606-JSC (N.D. Cal. 2026) .......... 1, 7

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975) .......... 1, 4, 5, 12

*Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*,
2017 WL 5759361 (N.D. Ohio Nov. 28, 2017) .......... 9

*Hedick v. Kraft Heinz Co.*,
2019 WL 4958238 (N.D. Ill. Oct. 8, 2019) .......... 11

*Hsu v. PubMatic, Inc.*,
2025 WL 3280896 (N.D. Cal. Nov. 25, 2025) .......... 1, 6, 7

*In re Bard Assocs., Inc.*,
2009 WL 4350780 (10th Cir. Dec. 2, 2009) .......... 9

*In re Network Assocs., Inc., Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) .......... 2, 11

*In re Paysafe Ltd.*,
2022 WL 1471122 (S.D.N.Y. May 10, 2022) .......... 8

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
2004 WL 7397357 (D.N.J. June 30, 2004) .......... 11

*In re Surebeam Corp. Sec. Litig.*,
2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) .......... 11

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 3

*Mansbach v. Prescott, Ball & Turben*,
598 F.2d 1017 (6th Cir. 1979),
*superseded on other grounds as stated by Burns v. Prudential Sec., Inc.*,
116 F. Supp. 2d 917 (N.D. Ohio 2000) .......... 4

**Page**

*May v. Barclays PLC*,
2023 WL 5950689 (S.D.N.Y. Sep. 13, 2023)....6, 7

*Merck v. Walmart, Inc.*,
114 F.4th 762 (6th Cir. 2024)....3

*Mosaic Fin. Ltd. v. Mut. S'holder Servs., LLC*,
767 F. Supp. 3d 619 (N.D. Ohio 2025)....5

*Nordea Inv. Mgmt. AB v. Teva Pharm. Indus. Ltd.*,
No. 3:18-cv-01681 (D. Conn. Oct. 10, 2018)....2, 4, 9

*Nayak v. Klarna Grp. plc*,
No. 25-cv-07033 (E.D.N.Y. Dec. 22, 2025)....8

*Plymouth Cnty. Ret. Ass'n v. Array Techs., Inc.*,
2021 WL 505164 (S.D.N.Y. Nov. 1, 2021)....8

*Porter v. GrafTech Int'l Ltd.*,
2024 WL 2189642 (N.D. Ohio May 15, 2024)....6

*Rao v. Quorum Health Corp.*,
221 F. Supp. 3d 987 (M.D. Tenn. 2016)....1, 2, 3

*Smith v. Ayres*,
977 F.2d 946 (5th Cir. 1992)....4

*Sprint Commc'ns Co. v. APCC Services, Inc.*,
554 U.S. 269 (2008)....5

*Value Recapture Partners LLC v. The Boeing Co.*,
2026 WL 445504 (N.D. Ill. Feb. 12, 2026)....1, 5, 12

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§78j(b)....1, 4, 5
§78u-4(a)(3)(B)(iii)(I)....2, 3, 5
§78u-4(a)(3)(B)(iii)(II)....3
§78u-4(a)(3)(B)(iii)(II)(aa)....10

Federal Rules of Civil Procedure
Rule 23....2

## I. INTRODUCTION

This Court must appoint as lead plaintiff "'the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members.'" *Rao v. Quorum Health Corp.*, 221 F. Supp. 3d 987, 988-89 (M.D. Tenn. 2016) (Crenshaw, J.).[1] Seemingly ignorant of that basic requirement, Nordea Investment Management AB asks the Court to appoint as the class's fiduciary a movant that did not purchase, sell, or hold a single share of LKQ Corporation stock during the Class Period.

Indeed, Nordea claims a $38.8 million loss it never suffered. The claim rests entirely on two "Assignments of Claims and Power of Attorney" executed four days before the statutory motion deadline, signed on both sides by the Nordea group's employees, and reciting on their face that they exist solely "to permit Nordea to prosecute claims, as a named plaintiff and/or lead plaintiff" in this action. ECF 22-1 at 9 n.1, 12 n.1. Those assignments cannot do what Nordea needs, at any step:

- They cannot cure Nordea's non-purchaser status. Indeed, the Supreme Court in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), "limited" §10(b) claims "to actual purchasers and sellers of securities." *Id.* at 730. "[T]actical" assignments expressly intended "to 'generat[e] federal standing'" – which Nordea's are on their face (ECF 22-1 at 9 n.1, 12 n.1) – do not turn Nordea itself into a purchaser under *Blue Chip Stamps*. *Value Recapture Partners LLC v. The Boeing Co.*, 2026 WL 445504, at *6 (N.D. Ill. Feb. 12, 2026).

- They cannot give Nordea a "financial interest" under the PSLRA because, as Nordea's own counsel argued to another federal court just days ago (*Bhuva v. Super Micro Comput., Inc.*, No. 3:26-cv-02606-JSC, ECF 74 at 10-11; 90 (N.D. Cal. 2026)), assignments that remit every dollar back to the assignor – which Nordea's do on their face (ECF 22-1 at 10 ¶B, 13 ¶B) – "do[] not provide [the movant] any financial stake in [the] action." *Hsu v. PubMatic, Inc.*, 2025 WL 3280896, at *2 (N.D. Cal. Nov. 25, 2025).

- Even if the assignments could supply both, Nordea has not even attempted to establish that they do either. To the contrary, Nordea offers bare assignments signed on both sides by Nordea's own personnel (ECF 22-1 at 11, 14): no assignor

---

[1] Unless otherwise noted all emphasis is added and citations are omitted. All defined terms and abbreviations remain unchanged from the Institutional Investors' initial motion. *See* ECF 25.

> declaration, no expert opinion, and no citation to Danish or Luxembourg law – though it knows precisely what a more robust showing looks like, having made one before. *Nordea Inv. Mgmt. AB v. Teva Pharm. Indus. Ltd.*, No. 3:18-cv-01681, ECF 1 at ¶¶27-42 (D. Conn. Oct. 10, 2018).

Independently, Nordea does not meet its *prima facie* burden to establish its adequacy considering that its parent is presently defending the ***largest criminal anti-money laundering prosecution in Danish history***, backed by an €880 million penalty demand only fractionally reserved. A separate Danish criminal police referral was opened on May 4, 2026, covering approximately 21,000 credit card customers. And in August 2024, the New York Department of Financial Services fined Nordea Bank Abp $35 million for AML failures tied to the Panama Papers and the Russian Laundromat. Given these concerning issues that Nordea failed to address in its motion, the Court should not "install an enterprise under such a cloud in a position of trust and confidence." *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999).

When viewed in this proper legal and factual context, it is clear that Nordea's motion should be denied.[2]

## II. ARGUMENT

In identifying the most adequate plaintiff, the Court "'shall adopt a presumption that the most adequate plaintiff'" is the one that has the "'largest financial interest in the relief sought by the class'" and "otherwise satisfies the requirements of Rule 23." *Rao*, 221 F. Supp. 3d at 989 (quoting 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)). That presumption may be rebutted where a class member shows the presumptive movant "'will not fairly and adequately protect the interests of the class'" or "'is

[2] While four motions for appointment as lead plaintiff were filed, only two remain pending. *See* ECF 32, 33 (non-oppositions filed by two other movants). Because the other motions do not substantively challenge the Institutional Investors' candidacy, their motions likewise are not substantively opposed herein. To be sure, their claimed losses are materially smaller than the Institutional Investors' losses, and their motions should be denied.

subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *Id.* at 989 (quoting 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)).

Here, Nordea asks the Court to appoint it as the lead plaintiff on the strength of a claimed $38.8 million loss. But Nordea itself did not suffer that loss, did not make the trades that generated it, and did not own the shares. Rather, the trades were made by three Sub-Funds of two foreign investment vehicles – a Danish investment association and a Luxembourgian umbrella SICAV – whose own governing documents place Nordea entirely outside their governance: Nordea is a sub-delegated portfolio management contractor, paid a group internal fee, and obligated to invest according to guidelines set by others. Nordea's sole connection to the claims is a pair of assignments "for purposes of prosecution and collection" executed just four days before the lead plaintiff deadline, bearing execution defects that include Nordea's own chief executive officer signing on behalf of the assignor and a signatory for the SICAV whose only stated office is at Nordea's parent holding company. *See* ECF 22-1.

Ultimately, Nordea's motion fails the PSLRA lead plaintiff test twice over: it is neither a qualified nor an adequate movant.

### A. Nordea's Manufactured Assignments Do Not Confer Standing, Do Not Create a Financial Interest, and Have Not Been Proven Valid

Nordea "bears the burden of establishing" the elements of its standing and its "financial interest in the relief sought by the class." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Merck v. Walmart, Inc.*, 114 F.4th 762, 772 (6th Cir. 2024) (same); 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Nordea's motion here rests entirely on two Assignments of Claims and Power of Attorney its own counsel drafted, its own group employees signed on both sides, and its own memorandum concedes were executed "to permit Nordea to prosecute claims, as a named plaintiff and/or lead plaintiff" in

this action. ECF 22-1 at 9 n.1, 12 n.1.[3] Whatever those documents purport to do, they do not do what Nordea needs to be appointed as the lead plaintiff in this case.[4]

### 1. The Assignments Cannot Supply *Blue Chip Stamps* Standing

The Supreme Court in *Blue Chip Stamps* confined §10(b) actions to actual "'purchasers' or 'sellers' of securities," rejecting standing for any party who was "not only not a buyer or seller of any security but it was not even a shareholder of the corporate petitioners." 421 U.S. at 751-52; *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1030 (6th Cir. 1979) (adopting the Birnbaum rule), *superseded on other grounds as stated by Burns v. Prudential Sec., Inc.*, 116 F. Supp. 2d 917 (N.D. Ohio 2000). Nordea concedes, as it must, that it never transacted in LKQ securities; the assignments admit the transactions were made by "the Sub-Fund[s]." ECF 22-1 at 9 n.1, 12 n.1. So situated, Nordea is the quintessential party *Blue Chip Stamps* excluded.

Indeed, an assignee that acquires a claim for the purpose of litigation "falls squarely within the type of remote purchasers whose 10b-5 actions are discouraged by *Blue Chip Stamps* and later decisions relying thereon." *Smith v. Ayres*, 977 F.2d 946, 950 (5th Cir. 1992). Just months ago, in

[3] The two signatories on behalf of Investeringsforeningen Nordea Invest are: (1) Henrika Vikman, identified solely as Chief Executive Officer of Nordea Investment Management AB (the assignee) ; and (2) Josefin Degerholm, Chief Executive Officer of Nordea Funds Ltd. (the management company). *See* ECF 22-1. Nordea (the movant) has provided no record evidence to establish that the assignee and management company are authorized signatories for Investeringsforeningen Nordea Invest. Similarly, the two signatories on behalf of Nordea 1, SICAV are: (1) Maria Ekqvist, identified solely as Head of Governance Office for Nordea Asset Management Holding AB – Nordea's parent company; and (2) Sinor Chhor, Managing Director of Nordea Investment Funds S.A. – the Luxembourg management company. *See* ECF 22-1. Neither signatory is identified on the assignment as an officer or director of Nordea 1, SICAV itself; each is identified solely by a title at a Nordea asset management group entity, and no board list, articles excerpt, or board resolution accompanies the motion.

[4] Notably, Nordea has never been appointed by a court to serve as a lead plaintiff in a PSLRA case. In the one case it filed in a U.S. federal court, *Nordea Inv. Mgmt. AB v. Teva Pharm. Indus. Ltd.*, No. 3:18-cv-01681 (D. Conn.), defendants challenged its standing and status as a non-purchaser of the relevant securities. *See id.*, ECF 85 at 52. The case was settled before those issues were addressed on the merits.

*Value Recapture Partners*, the court held that "tactical" assignments purporting "to 'generat[e] federal standing'" do not supply what *Blue Chip Stamps* requires to bring a §10(b) claim. 2026 WL 445504, at *5 (dismissing purportedly assigned claims).

As the court in *Mosaic Fin. Ltd. v. Mut. S'holder Servs., LLC*, 767 F. Supp. 3d 619 (N.D. Ohio 2025) articulated, "*Blue Chip Stamps* and its progeny demonstrate that to maintain a Section 10(b) cause of action, the plaintiff must have been on one end of the securities transaction and not played a peripheral or hypothetical role in the transaction." *Id.* at 640. Here, Nordea provides no record evidence that it played any role in the Sub-Funds' transactions in LKQ stock. *See* ECF 22-1. Consequently, "[a]s a matter of law, [Nordea] cannot assert a claim for securities fraud under Section 10b and Rule 10b-5." *Mosaic*, 767 F. Supp. 3d at 640 (granting defendants' motion to dismiss for lack of standing to bring a securities claim under the PSLRA).[5]

Even if Nordea was not facing a colorable *Blue Chip Stamps* defense, it still could not be appointed as lead plaintiff here because it lacks a financial interest in the relief sought by the class.

### 2. The Assignments Evidence that Nordea's Claimed Financial Interest Is Zero

To be appointed as lead plaintiff under the PSLRA, a movant must possess the "largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). But here, it is beyond dispute that Nordea did not purchase or sell any LKQ stock; the Sub-Funds did. Moreover, both Assignments concede that "amounts" relating to the "LKQ Related Claims" are "owed to the

[5] Nordea may respond that *Sprint Commc'ns Co. v. APCC Services, Inc.*, 554 U.S. 269, 285-86 (2008) holds that a valid assignee has constitutional standing even while promising to remit proceeds to the assignor. But *Sprint* is inapposite as it held only that a valid assignee may satisfy Article III's injury-in-fact requirement; it said nothing about whether an assignee that, unlike the assignees in *Sprint*, has no purchases or losses of its own may sue under SEC Rule 10b-5.

Sub-Fund[s]" that actually transacted in the stock, not to Nordea. ECF 22-1 at 10 ¶B, 13 ¶B.[6] This is problematic because an assignment that remits all proceeds back to the assignors and thus generates no personal economic stake for the assignee is not a "'financial interest in the relief sought by the class'" under the PSLRA. *See May v. Barclays PLC*, 2023 WL 5950689, at *13 (S.D.N.Y. Sep. 13, 2023) (remit-back assignment "does not give [the movant] a monetary interest in the proceeds"); *Hsu*, 2025 WL 3280896, at *2 (remit-back "assignment agreement does not provide [the movant] any financial stake in this action"); *see also Porter v. GrafTech Int'l Ltd.*, 2024 WL 2189642, at *9-*10 (N.D. Ohio May 15, 2024) (finding that movant with flawed assignments "has not sufficiently demonstrated under the strict standards required under the PSLRA that his motion truly represented the greatest claimed financial loss" and "represents an example of 'too little' (as to claimed personal interests) 'too late' (as not clearly delineating his own interests or authority to act on behalf of the others until well after the filing of his initial motion)"). So too here: when Nordea's assigned losses are properly removed, Nordea's actual financial interest is $0.

As the *May* court recognized in rejecting a remit-back structure Nordea now offers:

> [A]dopting Baker's position would undermine the presumption developed by Congress that the most adequate plaintiff is the one who stands to gain or lose the most through the litigation by permitting any plaintiff to become the presumptive lead plaintiff through an assignment of claims through which the plaintiff's interest in the outcome of the litigation did not increase monetarily. Carried to its logical conclusion, the proposition for which Baker argues would necessarily undo Congress's intent to convert securities litigation from an attorney-driven endeavor to a client-driven one by permitting anyone – including the attorney herself – to become the presumptive lead plaintiff without ever having bought or sold a single security through the artifice of having prospective class members assign their claims.

*Id.* at *14.

---

[6] The Assignments expressly state they are "intended to permit Nordea to prosecute claims" in this case. ECF 22-1 at 9 n.1, 12 n.1; *see also id.* (stating that assignment is "for purposes of prosecution and collection" only). Thus, once any "amounts owed to the Sub-Fund[s]" are prosecuted and collected, those amounts will be allocated to the Sub-Funds that transacted in LKQ stock, not Nordea. *Id.*

Nordea's own proposed lead counsel is well aware of this defect, having argued to another court at a hearing on July 2, 2026 and in earlier briefing that such remit-back clauses "'do[] not provide [the movant] any financial stake in [the] action,'" and that the resulting standing questions "'distract[] from the class-wide claims'" and make the movant "atypical." *See Bhuva*, No. 3:26-cv-02606-JSC, ECF 74, at 10-12; 90 (extensively quoting *Hsu*, 2025 WL 3280896, and citing *May*, 2023 WL 5950689).

Furthermore, Nordea's Certification appears to present a curated slice of what publicly available 13F data show: the entity that actually files as the top acquirer of LKQ stock during the relevant period (Nordea Funds Oy, the Danish fund's management company) at nearly 10 million net shares, while the only 13F entry bearing Nordea's own name was a net seller of LKQ during the relevant window. The tension lies in the fact that Nordea Funds Oy is not mentioned in the motion (or the Assignments) at all. Courts treat that kind of silence about affiliate trading as a mark against appointment.

For example, in *Baydale v. Am. Express Co.*, 2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009), despite the fact that a Swedish fund manager claimed the largest loss by a wide margin, the court denied its motion due to "potential conflicts arising from other activities carried out by [the movant]'s parent companies" and the movant's "refus[al] to disclose whether" its affiliated entities "had investments in [the issuer's] stock during the class period." *Id.* at *4 & n.3 (noting that entity disclosed its other funds' trading only "after the Court questioned" it at oral argument). In doing so, that court recognized the risk that, "at the very least, those transactions may result in unique defenses

or conflicts relevant to the adequacy inquiry." *Id.* at *4. Nordea's motion raises the same disclosure and conflict risks here.[7]

Consequently, the sole source of Nordea's financial interest is, per its own counsel, the very instruments that preclude a finding of any financial interest.

### 3. Nordea Has Not Carried Its Burden to Prove the Assignments Convey What It Claims

Even setting aside all the failures above, Nordea has not yet borne its burden of proving that the assignments are legally effective. It offers only the assignments themselves, executed on both sides by Nordea's own employees. ECF 22-1 at 11, 14. That is not a colorable evidentiary showing, and courts confronting far more robust submissions have declined appointment on that ground alone.

In *Plymouth Cnty. Ret. Ass'n v. Array Techs., Inc.*, 2021 WL 505164 (S.D.N.Y. Nov. 1, 2021), an Austrian asset manager submitted an executed Assignment Declaration from the Austrian fund it managed, and the court still found "a serious risk" that the manager "will be subject to unique standing defenses regarding the invalidity of the Assignment Declaration for failing to convey a property interest" because the manager had not established that the assignment was "sufficient under Austrian law." *Id.* at *2; *see also In re Paysafe Ltd.*, 2022 WL 1471122, at *8 (S.D.N.Y. May 10, 2022) (declining to appoint an assignee where the assignments could "potentially be challenged"; citing *Plymouth Cnty.* for the proposition that appointment was denied "due to risk that plaintiff

[7] Nordea's ultimate parent, Nordea Bank Abp, is itself a named defendant in a pending securities class action arising from the 2025 initial public offering of Klarna Group plc, a consumer-credit company. *Nayak v. Klarna Grp. plc*, No. 25-cv-07033, ECF 1 at ¶31 (E.D.N.Y. Dec. 22, 2025) (naming Nordea Bank Abp as an underwriter defendant). Klarna's business is consumer credit; so is the business of the Nordea affiliate now facing the Danish criminal referral detailed below. *Cf. Baydale*, 2009 WL 2603140, at *4 (noting that the movant's "parent company's businesses involve issuing credit cards pose[d] another potential conflict" where the defendant was engaged in the same line of business).

would be subject to unique defenses surrounding assignment of claims"). Nordea's showing here is far sparser.

This Circuit demands the same rigor. In *Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, 2017 WL 5759361 (N.D. Ohio Nov. 28, 2017), a German investment manager seeking appointment supported its assignment theory with a declaration from a tenured German law professor construing the German Investment Code and Civil Code, and the court conducted its own choice-of-law analysis, before crediting the assignments. *Id.* at *4-*7. Only after that showing did the court confirm the assignments were valid, and only after confirming that the assignor-side signatories were the investors' own independent representatives, not employees of the assignee manager. *Id.* at *6-*7. Nordea has supplied none of that showing.[8] What little it has supplied points the other way: the SICAV assignment was executed on the assignor's side by two Nordea group employees, not by any independent officer of Nordea 1, SICAV. ECF 22-1 at 14.

A bare recital is not evidence. A movant that bears the burden of proving its standing does not carry that burden by reciting, in a document its own employees signed on both sides, that standing simply exists.

---

[8] Nordea has previously at least attempted to make a more robust showing than it did here. In its *Teva* complaint, every assignment ran through the entity with supposed authority over the claims. Nordea 1, SICAV assigned its claims to Nordea Investment Funds S.A., which served as the management company. *Teva*, No. 3:18-cv-0168, ECF 1 at ¶30. Similarly, Investeringsforeningen Nordea Invest assigned its claims to Nordea Funds Ltd., its management company. *Id.* at ¶38. Only then did those management companies assign to Nordea. *Id.* at ¶28. The complaint pleaded the governing foreign law at every step. For example, it alleged that "only Investeringsforeningen Nordea Invest is authorized to assert and assign claims relating to securities held in these sub-funds." *Id.* at ¶39. And Nordea described its own role plainly: NIF SA and NF Ltd. "have appointed NIM as the investment manager of all the funds managed by NIF SA and NF LTD." *Id.* at ¶28. Here, the management companies assigned nothing. The Sub-Funds purportedly assigned straight to Nordea (the investment manager), through signatures from only Nordea's side of the house, with no law pleaded at all. *See* ECF 22-1. Any attempt to make that evidentiary showing now would be too little too late. *See In re Bard Assocs., Inc.*, 2009 WL 4350780, at *2 (10th Cir. Dec. 2, 2009) (finding no abuse of discretion in district court's holding that asset manager "demonstrated its financial interest too late because it did not produce assignments of its clients' claims until after the 60-day deadline").

### B. Nordea Cannot Establish Its *Prima Facie* Adequacy as a Class Fiduciary

Independent of any assignment defect, a movant that "will not fairly and adequately protect the interests of the class" cannot be appointed. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). While it is Nordea's burden to establish its adequacy *prima facie*, Nordea's motion is conspicuously silent as to the following criminal proceedings presently facing the Nordea enterprise:

- **Danish Criminal Trial (Largest in Danish History)**: Danish prosecutors are pursuing an €880 million penalty against Nordea Bank Abp for AML failures in its Baltic operations.[9] Nordea's own reserve is a fraction of the prosecution's demand, leaving a gap of hundreds of millions of euros that will require management attention throughout this litigation.[10]

- **New May 2026 Danish Police Referral**: On May 4, 2026, the Danish FSA referred Nordea Finans Danmark A/S to the National Unit for Serious Crime for criminal AML investigation based on systematic due diligence weaknesses for approximately 21,000 credit card customers a newly opened proceeding with no defined end date.

- **NYDFS Consent Order (August 2024)**: The New York Department of Financial Services imposed a $35 million penalty on Nordea Bank Abp for AML and Bank Secrecy Act failures connected to the Panama Papers, Russian Laundromat, and Azerbaijani Laundromat.

Any one of these alone would be enough for the Court to conclude that Nordea has not made the forgiving *prima facie* adequacy showing.

---

[9] Nordea admits it is a wholly owned subsidiary of Nordea Asset Management Holding AB, itself a wholly owned subsidiary of Nordea Bank Abp. ECF 23 at 1.

[10] *See LATEST: Prosecutors seek record €880m fine in Nordea money laundering case*, AML Intelligence (June 4, 2026), *available at* https://www.amlintelligence.com/2026/06/latest-prosecutors-seek-record-e880m-fine-in-nordea-money-laundering-case/ (reporting the 6.6 billion DKK (€880 million) demand against a €95 million reserve, and the Danish FSA's referral of Nordea Finans Danmark to police over credit-card customer due diligence); *Prosecutors seek 6.6 billion DKK fine against Nordea*, MarketScreener (June 2, 2026), *available at* https://www.marketscreener.com/news/prosecutors-seek-6-6-billion-dkk-fine-against-nordea-ce7f5ddedb8af426 (describing the proceeding as "the largest criminal case ever brought against a bank in Denmark") (last visited July 6, 2026).

*Network Associates* is directly on point. There, the court considered a lead plaintiff motion by a foreign entity whose "two sister banks (the one in Luxembourg and the one in Belgium) [were] under investigation for criminal fraud violations of the laws in Belgium" and that was "otherwise preoccupied with its own legal problems." 76 F. Supp. 2d at 1029. The court declined appointment on that basis, holding it was "unwilling to install an enterprise under such a cloud in a position of trust and confidence." *Id.*; *accord Hedick v. Kraft Heinz Co.*, 2019 WL 4958238, at *10-*11 (N.D. Ill. Oct. 8, 2019) (crediting adequacy concerns where a foreign regulator, the Czech National Bank, had sanctioned an institutional movant group's affiliated entities and found the group's principal, the signatory of its PSLRA certification, unfit to serve as a fund executive).

Similarly, in *In re Royal Dutch/Shell Transp. Sec. Litig.*, 2004 WL 7397357 (D.N.J. June 30, 2004), a European asset manager claiming to have suffered the largest financial interest was denied appointment because it was "undisputed that KBC Bank" – an affiliate of the movant – "is the subject of a pending criminal fraud investigation by the Belgian tax authorities." *Id.* at *11. While the asset manager movant protested that it was "'a wholly distinct entity from KBC Bank with only 3 directors in common,'" the court nonetheless denied appointment, noting that "'Courts have refused to appoint individuals of questionable character to serve as fiduciaries in class actions.'" *Id.*; *accord In re Surebeam Corp. Sec. Litig.*, 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004) ("Without comment or consideration of Mr. Brown's guilt or innocence as to the underlying charges [of securities industry misconduct], this court finds that there is at least a potential that Jamerica will be subject to unique defenses and will not fairly and adequately protect the interests of the class. Therefore, the court finds that Jamerica is incapable of serving as lead plaintiff.").

Notwithstanding Nordea's insistence that it is "the prototypical investor Congress sought to encourage,"[11] (ECF 21 at 9), the class is entitled to representation by an institution whose leadership is not besieged by criminal inquiries at every level of its parent enterprise. Nordea, on this record, is not that institution.

## III. CONCLUSION

Nordea purchased no LKQ securities and suffered no individual losses; its entire claimed interest is borrowed, four days before the filing deadline, from parties who could have sought this role themselves. That profile subjects it to a colorable *Blue Chip Stamps* defense under *Boeing,* and the same assignments that create the defense also negate its claimed financial interest to zero. Nor has Nordea carried its burden to prove that the assignments accomplish anything at all. Moreover, its parent's active AML proceedings independently raise disqualifying adequacy concerns. Any one of these issues alone would preclude Nordea's appointment as lead plaintiff. Combined, they foreclose it entirely.

Consequently, Nordea's motion should be denied.

DATED: July 6, 2026 Respectfully submitted,

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

[11] It is perhaps ironic that Nordea asks this Court to install it, through four-day-old collection assignments, as fiduciary for a class composed overwhelmingly of the very U.S. investors its own funds turn away. *See* Nordea 1, SICAV Prospectus at 3 (June 2026) ("The shares in the SICAV may not be directly or indirectly offered or sold in the USA."), *available at* https://www.nordea.lu/documents/prospectus/PRO_N1_eng_LU.pdf (last visited July 6, 2026); *see* Common Prospectus, Investeringsforeningen Nordea Invest §2.3, at 5 (June 26, 2026) (same), *available at* https://www.nordeafunds.com/da/fonde/klima-og-miljoe-kl-2 (last visited July 6, 2026). Congress's prototypical investor does not disclaim the U.S. securities laws in one filing and reach for their protection in another.

ROBBINS GELLER RUDMAN
& DOWD LLP
CHRISTOPHER M. WOOD, #032977
200 31st Avenue North
Nashville, TN 37203
Telephone: 615/244-2203
cwood@rgrdlaw.com

BARRETT JOHNSTON MARTIN
& GARRISON, PLLC
JERRY E. MARTIN, #20193
200 31st Avenue North
Nashville, TN 37203
Telephone: 615/244-2202
615/252-3798 (fax)
jmartin@barrettjohnston.com

ROBBINS GELLER RUDMAN
& DOWD LLP
DARREN J. ROBBINS
DANIELLE S. MYERS
MICHAEL ALBERT
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
darrenr@rgrdlaw.com
dmyers@rgrdlaw.com
malbert@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

O'DONOGHUE & O'DONOGHUE LLP
JOHN M. McINTIRE
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC 20015
Telephone: 202/362-0041
jmcintire@odonoghuelaw.com

VMT LAW, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel